IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

---

FUND RECOVERY SERVICES, LLC, a )
Delaware limited liability company, as assignee )
of PRINCETON ALTERNATIVE INCOME )
FUND, L.P., a New Jersey limited partnership, )
)
                     Plaintiff, )   Case No.: _____
)
      v. )
)
RAVIV WOLFE, an individual, and )
KATHERINE WOLFE, an individual, )
)
                     Defendants. )

---

## VERIFIED COMPLAINT

Plaintiff Fund Recovery Services, LLC ("FRS" or "Plaintiff"), as assignee of Princeton Alternative Income Fund, L.P. ("PAIF") (collectively, "Princeton"), by and through its undersigned counsel, ASHMAN LAW, LLC and AUSTGEN KUIPER JASAITIS P.C., for its Complaint against Defendants Raviv Wolfe ("Raviv") and Katherine Wolfe ("Katherine") (collectively, "Defendants" or the "Wolfes") alleges, upon knowledge as to itself and its own acts and otherwise upon information and belief, as follows:

### NATURE OF ACTION

1. Faced with multimillion dollar claims based a personal guarantee of repayment of funds lent by Princeton to one or more entities that Raviv owned and/or controlled, Raviv transferred certain assets to his wife, Katherine, including certain real property located at 571 Vernon Woods Drive, Valparaiso, Indiana 46385-9106; PIN: 64-09-03-276-001.000-003 ("Vernon Woods Property"), just months after those entities filed for bankruptcy protection. Raviv made the transfers,

and Katherine accepted them, for the purpose of avoiding the debt that Raviv owed to Princeton. Defendants' conduct constitutes actual and constructive fraud under the Indiana Uniform Fraudulent Transfer Act, §§ 32-18-2-1 *et seq.* Princeton seeks to set aside the transfer and have Defendants surrender title to the assets, including the deed to the Vernon Woods Property, to the Clerk of the Court, pending adjudication of the underlying claims Princeton has asserted against Raviv, with appropriate remedy once those claims are adjudicated in Princeton's favor. Princeton also seeks an award of punitive damages, interest, attorneys' fees and costs, in amounts to be determined at trial.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a). FRS is a limited liability company organized under the laws of Delaware, with its principal place of business located in Princeton, New Jersey. None of FRS's members or managers are residents or citizens of Indiana or Illinois. Upon information and belief, Raviv is a citizen of Illinois who resides in Chicago, and Katherine is a citizen of Indiana who resides at the Vernon Woods Property. The amount in controversy exceeds $75,000.00, exclusive of interest and costs, as the value of the Vernon Woods Property exceeds $75,000.00.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(2) and (c)(2), because the lawsuit involves actions that took place in, and property that is located within, the Northern District of Indiana.

## FACTS

**A.   Princeton's Claims Against Raviv**

4. On September 25, 2020, FRS filed a lawsuit against Raviv and many other defendants in the United States District Court for the Northern District of Illinois, captioned as *Fund Recovery Services, LLC v. RBC Capital Markets, LLC, et al.*, Case No. 20-cv-5730 (N.D. Ill.) (the "RICO

Lawsuit"), alleging multiple claims for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, common law fraud, intentional misrepresentations, breach of personal guaranty, and other claims. FRS is seeking damages of $238,014,066.18 in the RICO Lawsuit.

5.  Raviv was the CEO and a member of the Board of Managers for, and a partial owner of, Argon Credit, LLC ("Argon Credit"), and Argon X, LLC ("Argon X") (collectively, the "Argon Entities"). Raviv, as an individual owner and member of Argon Credit, provided a limited personal guaranty (the "Personal Guaranty") of Argon X's obligations under a certain revolving note ultimately assigned to FRS which guaranteed the full, prompt and unconditional payment of Argon X's liabilities and obligations under the applicable loan agreements assigned to FRS.

6.  Argon X had a total lending limit of $37,500,000, and the approximate balance owed by Argon X in December 2016 was $37 million, which Raviv had guaranteed. The RICO Lawsuit alleges, among other things, that Raviv committed fraud and engaged in other acts of wrongdoing, constituting RICO and violation of various other laws, and seeks recovery of more than $238 million.

**B.   The Vernon Woods Property and Ownership Transfer**

7.  On February 20, 2013, Raviv and Katherine purchased the Vernon Woods Property. Both were listed on the deed.

8.  By no later than November 11, 2015, Raviv knew that the Argon Entities were insolvent, and that the Argon business model was unsustainable.

9.  As of January 31, 2015, Argon Credit's liabilities exceeded its assets. Each month of operations during 2015 increased Argon Credit's negative equity. According to an independent accountant's report, as of December 31, 2015, Argon Credit had negative equity of $11,285,946.

10. The Argon Entities hid their financial problems and provided false and inflated financial information to PAIF as their lender during 2016. On or about December 7, 2016, the Argon Entities finally informed PAIF about their over-inflated financials. Immediately upon receiving this information, PAIF provided the Argon Entities with notice of its intent to call the loan by letter to Raviv, dated December 7, 2016.

11. The December 7, 2016 letter demanded immediate payment of $37,017,774.97, which represented the then-total outstanding principal and interest on the loan agreement and stated that the basis for the event of default was "Borrower's admitted and intentional failure to provide full and accurate financial information pursuant to the Loan Agreement, constituting an Event of Default under the Loan Agreement." Raviv, along with many others who owned and managed the Argon Entities, assisted in keeping two sets of books and records – one set for internal control purposes and the other fraudulent set for submission to their lender that would permit the Argon Entities the ability to continue borrowing against the loan (a revolving note), at a time when, if PAIF had been fully informed, PAIF would have called the revolving note.

12. An independent accounting firm noted that, as of December 31, 2015, the Argon Entities had suffered recurring losses from operations and had incurred a net loss of $11,208,780 for the year ended December 31, 2015, and that "[t]he events and circumstances described above create substantial doubt about the Company's ability to continue as a going concern."

13. On December 7, 2016, pursuant to the loan agreement, PAIF assigned all of its right, title and ownership interest in, and claims to the operative loan agreement, all other financing agreements, and the Secured Collateral (as defined in the loan agreement), to FRS. PAIF's assignment to FRS included the assignment of all right, title, and ownership interest in, and claims

to any and all other agreements between PAIF and the Argon Entities. Notice of same was provided to Raviv. *See* Exhibit A hereto.

14. On December 16, 2016, the Argon Entities filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, captioned as *In re: Argon Credit, LLC et al.*, Case No. 16-39654 (jointly administrated) (N.D. Ill. 2016) (the "Argon Bankruptcy"). On January 11, 2017, the Argon Bankruptcy was converted from a chapter 11 bankruptcy to a chapter 7 bankruptcy.

15. On March 16, 2017, just months after the filing of the Argon Bankruptcy, Raviv transferred assets to Katherine, including but not limited to his ownership interest in the Vernon Woods Property. As a result, only Katherine is listed on the deed to that property since that date.

## CAUSES OF ACTION

### COUNT I
### Actual Fraudulent Conveyance - Ind. Code § 32-18-2-14

16. Plaintiff incorporates and realleges paragraphs 1 through 15 of this Verified Complaint as if fully restated herein.

17. Section 14 of the Indiana Uniform Fraudulent Transfer Act (the "IUFTA") provides in pertinent part as follows:

> A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (B) intended to incur or believed or reasonably should have believed that the debtor would incur debts beyond the debtor's ability to pay as the debts became due.

Ind. Code § 32-18-2-14.

18. Raviv made the transfer of his assets to his wife, Katherine, including but not limited to his interest in the Vernon Woods Property, during the pendency of the Argon Bankruptcies, which had been converted from a Chapter 11 to a Chapter 7 because the Argon Entities could not meet the requirements for reorganization under Chapter 11, and the transfer either left Raviv insolvent or otherwise significantly reduced the value of his estate. The transfers occurred in secret and in a hurried transaction, not in the usual mode of doing business, immediately after the Argon Bankruptcy filing. It was a transaction differing from customary methods, and, at the time, still afforded Raviv the benefits over the transferred property. Upon information and belief, there was no consideration for the transfer, and it was obviously between family members.

**WHEREFORE,** with respect to Count I of this Complaint, FRS respectfully requests that this Court enter judgment in its favor and against Raviv Wolfe and Katherine Wolfe, and that the Court order: (1) the conveyance of the Vernon Hills Property be set aside as fraudulent vis-a-vis FRS; (2) the Wolfes to surrender the title to the Vernon Hills Property to the Clerk of the Court during the pendency of this action and/or the RICO Lawsuit; (3) after adjudication of FRS's claims against Raviv in FRS's favor, a judicial sale of the Vernon Hills Property, according to the law, free and clear of any right, title, lien, claim or interest of any of the Defendants herein, and that the proceeds from such sale be distributed to FRS; (4) an award of attorneys' fees and costs, punitive damages in an amount to be determined at trial; and (5) any further relief that the Court finds appropriate under the circumstances.

## COUNT II
### Constructive Fraudulent Conveyance -- Ind. Code § 32-18-2-15

19. Plaintiff incorporates and realleges paragraphs 1 through 15 of this Verified Complaint as if fully restated herein.

20. The IUFTA provides that a constructive fraudulent transfer occurs when:

> A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if:
>
> (1) the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation; and
>
> (2) the debtor:
>
> > (A) was insolvent at that time; or
> >
> > (B) became insolvent as a result of the transfer or obligation.

Ind. Code § 32-18-2-15.

21. Upon information and belief, Raviv received nothing in return for transferring his interest in the Vernon Hills Property to Katherine, and Raviv was insolvent at the time he made this transfer to Katherine.

22. Raviv had a personal guaranty on a loan balance of $37,017,774.97, and the Argon Entities were insolvent and had filed a bankruptcy petition prior to the transfer. Raviv thus knew that the Argon Entities could not possibly repay the loan balance. Raviv also knew that he could not repay the loan balance. Moreover, Raviv knew he had engaged in fraud and other wrongful acts that would subject himself to personal liability in amounts that far exceeded his assets and ability to pay.

**WHEREFORE,** with respect to Count II of this Complaint, FRS respectfully requests that this Court enter judgment in its favor and against Raviv Wolfe and Katherine Wolfe, and that the Court order: (1) the conveyance of the Vernon Hills Property be set aside as fraudulent vis-a-vis FRS; (2) the Wolfes to surrender the title to the Vernon Hills Property to the Clerk of the Court during the pendency of this action and/or the RICO Lawsuit; (3) after adjudication of FRS's claims against Raviv in FRS's favor, a judicial sale of the Vernon Hills Property, according to the law, free

and clear of any right, title, lien, claim or interest of any of the Defendants herein, and that the proceeds from such sale be distributed to FRS; (4) an award of attorneys' fees and costs, punitive damages in an amount to be determined at trial; and (5) any further relief that the Court finds appropriate under the circumstances.

Dated: March 15, 2021

Respectfully submitted,

FUND RECOVERY SERVICES, LLC, as assignee of PRINCETON ALTERNATIVE INCOME FUND, L.P.

/s/*Ryan A. Deutmeyer*
Ryan A. Deutmeyer
Michael J. Jasaitis
AUSTGEN KUIPER JASAITIS P.C.
130 North Main Street
Crown Point, Indiana 46307
(219) 663-5600 (p)
(219) 662-3519 (f)
mjasaitis@austgenlaw.com
rdeutmeyer@austgenlaw.com

Kenneth J. Ashman
Jeffrey E. Crane
ASHMAN LAW, LLC
2801 Orange Brace Road
Riverwoods, Illinois 60603
(312) 596-1700 (p)
(312) 873-3800 (f)
kashman@ashman.law
jcrane@ashman.law

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the facts contained in this Verified Complaint are true and correct.

Dated: March 15, 2021

By: _____
Jack Cook